```
            UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF WEST VIRGINIA
                   AT CHARLESTON
```

SARAH JO BROWN, individually
and as beneficiary under a
certain life insurance policy
issued to David Meek Brown,
and as Executrix of the Estate
of David Meek Brown,

    Plaintiff

v.                                   Civil Action No. 2:04-1137

METROPOLITAN LIFE INSURANCE
COMPANY, and AVAYA INC.,

    Defendants

### MEMORANDUM OPINION AND ORDER

Pending is the parties' briefing on plaintiff's request for discovery. This matter became ripe with plaintiff's reply, filed March 9, 2005.

### I.

Plaintiff is the widow of David Meek Brown. (Compl. ¶ 1.) Mr. Brown, who died on January 31, 2004, was previously employed by Avaya, Inc. ("Avaya") until his retirement on July 31, 2001. (Id.) Defendant Metropolitan Group Life Insurance Company ("MetLife") issued a group life insurance policy that covered Mr. Brown. (Id. ¶ 2.)

On September 12, 2001, Avaya sent Mr. Brown a piece of correspondence that contained the following advice:

> IMPORTANT!
> Avaya will deduct from each pension payment the amount necessary, if any, to pay for your benefit elections.  If these payments are insufficient, you will receive a coupon payment book under separate cover.

(Pl.'s Memo. in Supp. at 2.)[1]  In November 2001, SHPS, Inc., Avaya's benefits enrollment administrator, sent Mr. Brown a letter that stated pertinently as follows:

> Change in Supplementary Life Insurance Premium Payments -- If you participated in the Supplementary Life Insurance program as an active salaried employee and continued coverage in retirement, you will be billed directly by MetLife for your supplementary life insurance premiums effective January 1, 2002.  Premiums will no longer be deducted from your retirement pension check, effective January 1, 2002.

(Id. ex. 4 at 1.)  On January 28, 2002, Mr. Brown reduced his supplemental life insurance coverage from $288,000 to $190,000. (Id. ¶ 14.)  That same day, he sent MetLife a check for his January payment.  (Id.)  The parties have provided no other information about (1) Mr. Brown's payment practices, (2) what, if anything, prompted him to make the January payment, and (3) whether any other payments were made by him.

---

[1] Plaintiff asserts this correspondence is attached as exhibit 3 to the complaint.  Exhibit 3 contains no such provision.

Plaintiff was responsible throughout the pre-litigation time period for retrieving and opening mail received by her family, along with writing checks for recurring payments.  (Id. ¶ 15.)  She asserts that she never received via mail a lapse or cancellation notice or a payment book relating to Mr. Brown's life insurance coverage.  (Id. ¶ 16.)

When Mr. Brown passed away on January 31, 2004, plaintiff sought payment of his life insurance policy proceeds from MetLife.  MetLife denied coverage on the grounds that the policy had lapsed effective July 20, 2002.  MetLife asserts it sent default and cancellation notices to Mr. Brown.

Plaintiff asserts that the sparse administrative record in this action is totally inadequate for purposes of review:

> The Court's inspection of the relevant documents in the "administrative record" as attached to the Complaint will show that there are no true copies of any notice sent to Plaintiff.  What has been provided in the administrative record below (which Plaintiff maintains is not really an "administrative record" as that term is correctly used in ERISA cases) are simply computer generated "duplicate forms" that may or may not have been sent.  Upon information and belief, Plaintiff concludes that there is no "hard copy" file at MetLife reflecting MetLife's correspondence with Plaintiff <u>before</u> the alleged lapse or cancellation.  Certainly in the "administrative record" there was no ability to elicit credible testimony concerning how reliable the computer system is, how notices are transferred from the computer to the mails, and whether there is any

    quality control to determine if, in fact, documents that are supposed to be mailed are <u>actually</u> mailed.

(Pl.'s Memo. in Supp. at 4.)

After MetLife's refusal to pay over the policy proceeds, plaintiff apparently pursued the matter further with the West Virginia Office of the Insurance Commissioner ("OIC"). On June 2, 2004, Winford L. Saunders II, an OIC complaints examiner, advised plaintiff as follows:

> Enclosed is the letter I recently received from [MetLife] in reference to your complaint.
>
> [MetLife] is still investigating the situation and they are allowing you sixty (60) days to furnish any additional information for your appeal.
>
> Should you have any questions, please fill [sic] free in contacting me about this matter.

(Compl., ex. 6.)  On August 12, 2004, Mr. Saunders followed up with plaintiff:

> This letter is to inform you that the actions taken by [MetLife] are not in violation of any West Virginia Insurance laws.  For that reason, we cannot rescind their decision.
>
> I regret that my efforts on your behalf could not result in a more favorable response from the insurer.  If I can be of any further assistance, please feel free to contact me.

(<u>Id.</u>)[2]

---

[2]The court is uncertain whether plaintiff properly exhausted her administrative remedies in accordance with the plan.  Although some proceedings appear to have taken place before the

(continued...)

On October 20, 2004, plaintiff instituted this action. She alleges defendants (1) breached their fiduciary duties (29 U.S.C. § 1104, 1109(a)), and (2) wrongfully denied her benefits (29 U.S.C. § 1132(a)(1)(B)).  She seeks the policy proceeds of $190,000, plus interest and attorney fees.

On January 19, 2005, the court received the report of the parties' planning meeting.  The same day, the court's law clerk followed up with the parties concerning the contents of the report.  In sum, the parties disagreed concerning the necessity, and propriety, of discovery beyond the administrative record.

In order to facilitate a complete record upon which to base a reasoned decision, the court directed the parties to brief the issues of whether discovery was proper and, if so, its proposed scope.  The scheduling conference was continued

---

[2](...continued)
OIC, it is unclear whether plaintiff submitted a plan-sanctioned appeal and, if so, whether the plan actually reviewed its initial decision in accordance with plan documents.
   Although defendants have raised exhaustion as an affirmative defense, they have not yet moved pursuant to Rule 12(b)(6).  Our court of appeals suggests the exhaustion question, unencumbered by any factual disputes, should be addressed at the earliest possible opportunity: "An ERISA welfare benefit plan participant must both pursue and exhaust plan remedies before gaining access to the federal courts." Gayle v. United Parcel Serv., Inc., 401 F.3d 222, 226 (4th Cir. 2005)(affirming dismissal of case at early stage of the proceedings pursuant to Rule 12(b)(6)).

generally pending resolution of these issues.  The matter is now fully briefed.

                                II.

A.   The Applicable Standard

It is well-established that a court reviewing a benefits denial under ERISA must first determine whether the plan under consideration accords the administrator or fiduciary discretion to determine benefit eligibility.  Firestone Tire and Rubber Company v. Bruch, 489 U.S. 101, 111 (1989); Smith v. Continental Cas. Co., 369 F.3d 412, 417 (4th Cir. 2004).  If the plan confers discretion, its exercise is not subject to court interference unless the plan official has abused the same.  Id.; see Ellis v. Metropolitan Life Ins. Co., 126 F.3d 228, 232 (4th Cir. 1997); Bernstein v. CapitalCare, Inc., 70 F.3d 783, 788 (4th Cir. 1995).  Alternatively, if the grant of discretion is missing, the court reviews the matter de novo.  Rego v. Westvaco Corp., 319 F.3d 140, 146 (4th Cir. 2003); Johannssen v. District No. 1-Pacific Coast Dist., MEBA Pension Plan, 292 F.3d 159, 168 (4th Cir. 2002).

An administrator or fiduciary vested with discretion, however, may nonetheless be subject to a less deferential standard under certain circumstances. For example, if a plan official is operating under a conflict of interest, as when its decision to award or deny benefits impacts its own financial interests, the conflict is weighed as a factor in determining whether there is an abuse of discretion. <u>Elliott v. Sara Lee Corp.</u>, 190 F.3d 601, 605 (4th Cir. 1999); <u>Ellis</u>, 126 F.3d at 233; <u>Doe v. Group Hospitalization and Medical Servs.</u>, 3 F.3d 80, 87 (4th Cir. 1993).

One of several reasons for discerning the appropriate standard of review was noted in <u>Bernstein</u>:

> Determining the appropriate standard of review of the plan administrator's decision is important because, among other reasons, it controls whether the district court may consider evidence that was not presented to the plan administrator.

<u>Id.</u> at 788. The principal case in this circuit for determining the propriety of extrinsic evidence in the midst of a <u>de novo</u> review is <u>Quesinberry v. Life Ins. Co. of North America</u>, 987 F.2d 1017, 1025 (4th Cir. 1993):

> In summary, we conclude that courts conducting <u>de novo</u> review of ERISA benefits claims should review only the evidentiary record that was presented to the plan administrator or trustee except where the district court finds that additional evidence is necessary for resolution of the benefit claim. Exceptional

>circumstances that may warrant an exercise of the court's discretion to allow additional evidence include the following: claims that require consideration of complex medical questions or issues regarding the credibility of medical experts; <u>the availability of very limited administrative review procedures with little or no evidentiary record</u>; the necessity of evidence regarding interpretation of the terms of the plan rather than specific historical facts; <u>instances where the payor and the administrator are the same entity and the court is concerned about impartiality</u>; <u>claims which would have been insurance contract claims prior to ERISA</u>; and <u>circumstances in which there is additional evidence that the claimant could not have presented in the administrative process</u>. We do not intimate, however, that the introduction of new evidence is required in such cases. A district court may well conclude that the case can be properly resolved on the administrative record without the need to put the parties to additional delay and expense.

<u>Id.</u> at 1026 (emphasis added).

The leading case in this circuit on the use of extrinsic evidence in the abuse-of-discretion setting is <u>Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co.</u>, 32 F.3d 120 (4th Cir. 1994):

>We continue to adhere to the view expressed in <u>Berry[ v. Ciba-Geigy</u>, 761 F.2d 1003 (4th Cir.1985)] that an assessment of the reasonableness of the administrator's decision must be based on the facts known to it at the time. Thus, although it may be appropriate for a court conducting a <u>de</u> <u>novo</u> review of a plan administrator's action to consider evidence that was not taken into account by the administrator, the contrary approach should be followed when conducting a review under . . . the abuse of discretion standard.

<u>Id.</u> at 125 (citations and footnotes omitted); ("The <u>Sheppard</u>

opinion reaffirmed this court's pre-[Firestone] decision of Berry . . ., in which we stated, 'If the [district] court believed the administrator lacked adequate evidence, the proper course was to "remand to the trustees for a new determination," not to bring additional evidence before the district court.' Id. at 1007 (citations omitted)."). With these governing principles in mind, the court turns to the analysis.

B.   The Propriety of Discovery

This action is in the earliest stages of its development.  Neither party has briefed the appropriate standard of review.  The administrative record has not been submitted.  Most importantly, the court has no plan documents before it that might aid in the determination of whether Avaya, MetLife, or both, are vested with discretion to make the determination of whether the lapse and cancellation were properly noticed in advance of the determination to withhold the policy proceeds.

The discovery request is distinct from that lodged in the usual ERISA case.  First, it appears the administrative record spans but a few pages.  Second, if the de novo standard applies, discovery would be appropriate in order to provide the

court with the complete record needed for its decision, in accordance with Quesinberry. Alternatively, if an abuse-of-discretion standard applies, the court is mindful of Sheppard's command that additional evidence should be taken, and considered, under the auspices of the plan via a remand. Unfortunately, the applicable standard is unknown at this time.[3]

Third, this case does not entail the usual sort of extrinsic evidence that comes to light in a denial-of-benefits case. That evidence, often in the form of supplemental medical opinions or reports, frequently comes about outside of the discovery process as a result of additional medical exams performed on the plaintiff prior to, or during, the litigation. In this case, however, plaintiff desires to avail herself of the discovery rules in order to "to elicit credible testimony concerning how reliable the computer system is, how notices are transferred from the computer to the mails, and whether there is

---

[3] It is for this reason plaintiff misses the mark in asserting "[t]his case . . . is squarely within . . . Quesinberry . . . ." (Pl.'s Memo. in Supp. at 6.) That assertion necessarily assumes a de novo standard of review applies here. See Sheppard, 32 F.3d at 125 n.3 ("[W]e held [in Quesinberry] that, in conducting a de novo review in appeals of benefit determinations under ERISA, it is sometimes proper for a district court to consider evidence that was not before the administrator. We had no reason there to discuss the consideration of extraneous evidence where district courts are limited to a deferential review of an administrator's decision.") (emphasis added).

any quality control to determine if, in fact, documents that are supposed to be mailed are <u>actually</u> mailed." (Pl.'s Memo. in Supp. at 4.)  Although this evidence might prove critical to plaintiff in developing her case, the court is unaware of any plan mechanism for providing it to her.  Fourth, the evidence sought through discovery is possessed by the defendants alone.

Confronted with these unusual circumstances, and desiring to move the matter forward, the court will permit plaintiff to conduct limited discovery on those matters identified in her brief.  This discovery, however, is stayed pending further discussions with the parties at the scheduling conference, which is ORDERED scheduled for June 17, 2005, at 10:30 a.m.  If other matters need be addressed prior to discovery, such as defendant's exhaustion defense, the parties should be prepared to raise and discuss the issues at the scheduling conference.

If discovery produces information not taken into account by the defendants during their review of the claim, and if the abuse-of-discretion standard is subsequently determined to apply, the court will consider remanding the case to defendants for further proceedings.  See <u>Bernstein</u>, 70 F.3d at 790 ("During discovery in this lawsuit before the district court, much

11

relevant additional evidence has been developed, and the remaining issues have been narrowed. However, the benefit determination should first be made by the plan administrator.").

The Clerk is directed to forward copies of this written opinion and order to all counsel of record.

DATED: June 1, 2005

John T. Copenhaver, Jr.
United States District Judge